IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ALEXANDER MORTENSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:21-CV-00829-MDH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Plaintiff Alexander Mortenson's appeal of Defendant Social Security Administration Commissioner's denial of his application for disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff exhausted administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that substantial evidence supports the administrative law judge's ("ALJ's") decision, which this Court **AFFIRMS**.

## BACKGROUND

On July 20, 2017, Plaintiff filed an application for disability and disability insurance benefits under Title II of the Social Security Act ("the Act") 42 U.S.C. §§ 401, *et seq.*, with an alleged onset date of March 1, 2016. Plaintiff's application was denied initially, after which he appealed the denials to an ALJ. Following an oral hearing, the ALJ found Plaintiff was not disabled for purposes of the Act. The United States Court for the Western District of Missouri remanded the Commissioner's decision for failure to discuss Plaintiff's allegations of back problems. On

remand, the ALJ conducted another oral hearing and again found Plaintiff is not disabled. Plaintiff has exhausted his administrative remedies. The ALJ's decision is accordingly the final decision of the Commissioner, over which this Court has judicial review. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff alleges disability due to peptic ulcer disease post gastric repair, GERD, alcoholic hepatitis, cholestasis with transaminases, degenerative disc disease, stenosis, radiculopathy, neuropathy, obesity, myopia, depression, and anxiety. The ALJ found Plaintiff suffered during the relevant period from the following severe impairments: obesity, degenerative joint disease of the lumbar and cervical spine with stenosis and radiculopathy, neuropathy, peptic ulcer disease post gastric repair, GERD, alcoholic hepatitis, and cholestasis with transaminases. The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) with additional limitations.

Plaintiff's brief raises many arguments for why this Court should reverse the ALJ's decision. Generally, Plaintiff claims the ALJ's RFC as to mental functional limitations lacks substantial evidence because, *inter alia*, the ALJ failed to discuss all mental limitations in the RFC. Plaintiff then argues that the ALJ's findings as to Plaintiff's physical functional limitations lack substantial evidence because the ALJ mis-analyzed much of the evidence as to Plaintiff's back problems. Finally, Plaintiff argues that the ALJ committed reversible error because he failed to identify how he accounted for an alleged conflict between testimony from a vocational expert and the dictionary of occupational titles.

**STANDARD**

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on

3

the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).

**A. Substantial Evidence Supports the ALJ's RFC as to Plaintiff's mental limitations**

Plaintiff first argues that the ALJ failed to include in its RFC calculation mild mental limitations in "adapting or managing oneself." This violates the relevant regulation, Plaintiff argues, which requires the ALJ to consider all limitations when identifying the RFC. This Court finds that the ALJ did in fact adequately consider all limitations as required by the regulation. The ALJ found that Plaintiff suffered from mild limitations as to adapting and managing oneself. The ALJ clarified that these specific limitations relate to, "difficulties related to alcohol abuse and withdrawal prior to attaining sustained sobriety." (Tr. at 569). The ALJ also found that this mild limitation failed to result in a "greater degree of functional limitation than stated in the residual functional capacity." (Tr. at 569). As Defendant notes, "When the ALJ finds no severe mental impairments, she is not required to discuss any mental limitations in the RFC." *O'Riley v. Saul*, No. 19-00562-CV-W-ODS, 2020 WL 3497467, at *2 (W.D. Mo. June 29, 2020) (citations omitted). In *O'Riley*, the court cited to SSR 96-8p, which states limits the RFC assessment to "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). While correct the ALJ must also consider non-severe impairments in the RFC, for consideration in the RFC, such impairments must nonetheless result from a medically determinable impairment. *Id*. Here, though the ALJ found Plaintiff suffers from a mild limitation in terms of

4

adapting or managing himself, the ALJ has not found that this mild limitation results from a medically determinable impairment. Accordingly, it is not reversable error for the RFC to avoid discussion of these mild mental limitations.

Plaintiff next argues that the ALJ failed to explain why he did not take into account the findings of Dr. Markway as to limitations, even though he found Dr. Markway's opinion persuasive. Contrary to Plaintiff's claim, however, the ALJ appears to have considered various limitations identified by Dr. Markway in crafting the RFC. First, the ALJ's discussion of Dr. Markway's opinion occurs in the portion of the ALJ's opinion that specifically discusses the RFC. (Tr. at 578). Second, some of the ALJ's findings related to Plaintiff's RFC mirror specific findings from Dr. Markway. For example, Dr. Markway found Plaintiff could carry about 10 pounds frequently and sit for more than 6 hours during an eight-hour workday. (Tr. at 197). This is consistent with the ALJ's findings as to Plaintiff's RFC. (Tr. at 572). Finally, to the extent Dr. Markway identified any neurocognitive limitations (Tr. 195), no such limitation appears greater than "mild." As this Court discussed above, if the ALJ finds no severe mental impairments resulting from a medically determinable impairment, the ALJ is not required to discuss such limitations in forming the ALJ.

Plaintiff next argues remand is required because the ALJ previously found additional mild limitations in the areas of understanding, remembering, or applying information and interacting with others. The ALJ's updated findings, however, lack mild limitations in these two categories and fail to explain the difference. In support, Plaintiff cites *Jefferson v. Saul*, Case 4:19-CV-00524-BP, Doc. 21, p. 5-6 (W.D. Mo. April 8, 2020), where the court remanded the ALJ's findings with the instruction to "offer an explanation for excluding the limitation on working with small parts, which was previously included in the RFC." *Id*. at 6. *Jefferson* is distinct, however, because the *Jefferson* ALJ's original RFC specifically included a functioning limitation related to working with

5

small parts. *Id*. Plaintiff is correct that the ALJ previously found additional limitations in the areas of understanding, remembering, or applying information and interacting with others. (Tr. at 50). These limitations remained "mild," however, and did not factor into Plaintiff's original RFC because. The ALJ did not find that these additional mild mental limitations resulted from a medically determinable impairment. Because the ALJ is not required to discuss mild mental limitations in the RFC when such limits do not result from a medically determinable impairment, insufficient explanation as to the differences in mild limitations between Plaintiff's two RFCs is not reversible error.

Plaintiff further contends the ALJ committed error when he found Dr. Bond's opinion was unpersuasive because it came after the relevant period. Because Dr. Bond made clear the medical opinion related back to the relevant period, the timing of Dr. Bond's opinion does not suggest a lack of persuasiveness. (Doc. 12 at 5-6). The ALJ's assessment of Dr. Bond's opinion, however, consists of significantly more. (Tr. at 578). Though the ALJ acknowledges that Dr. Bond's authoring his opinion well after the relevant period supports lack of persuasiveness, the ALJ also references lack of supporting evidence and inconsistency with the greater record. (Tr. at 578). The ALJ also cites as reasons for lack of persuasiveness insufficient evidence showing a longitudinal assessment of documentary evidence as well as an opinion consisting primarily of checkmarks. (Tr. at 578). This constitutes an adequate basis for showing substantial evidence supports the ALJ's findings as to the persuasiveness of Dr. Bond's opinion.

## B. Substantial evidence supports the ALJ's RFC as to physical functional limitations

Plaintiff argues the ALJ committed error with regard to the specific finding about Plaintiff's use of a cane to ambulate. Though the ALJ found that Plaintiff did not require the use of a cane, Plaintiff argues, this position lacks substantial evidence in the record. Plaintiff also contends that a finding that Plaintiff does not need a cane is inconsistent with recent medical examinations showing continued deterioration. The ALJ's findings about Plaintiff's ability to ambulate without a cane, however, are based on evidence apart from Dr. Rump's finding that a cane appeared unnecessary. For example, the ALJ explains that in reaching his conclusion he considered other medical evidence that showed Plaintiff walked with a normal or antalgic gait without assistance of any device. (Tr. at 577). The ALJ also considered how electrodiagnostic testing failed to uncover radiculopathy and how "reflexes, sensory function, and strength were either normal or only mildly abnormal." (Tr. at 577). The ALJ also cited a lack of documentary evidence as "to specific circumstances in which an assistive device was purportedly needed, which is a requirement to establish medical need." (Tr. at 577).

Plaintiff next contends that the ALJ committed error when he found unpersuasive some medical opinion because it lacked a function-by-function assessment and because it was based on a single examination. This is problematic, Plaintiff asserts, because the ALJ found Dr. Rump's opinion persuasive, though it has the same characteristics. While the ALJ has cited lack of function-by-function assessment and limited exposure to the patient as supportive of lack of persuasion in certain medical opinions, the ALJ found unpersuasive no opinion based solely on these deficiencies. The ALJ did not cite as strengths of Dr. Rump's opinion lack of a functioning-by-functioning assessment or number of times Plaintiff visited Dr. Rump for care. This indicates

that the ALJ has remained "consistent with how he treats opinion evidence." Holdeman v. Kijakazi, No. 20-CV-729-NKL, 2021 WL 6062368, at *5 (W.D. Mo. Dec. 22, 2021).

Plaintiff next argues the ALJ committed error when he dismissed all other opinions as to Plaintiff's physical impairments but nevertheless found that Plaintiff could manage light work and with additional specific limitations. This is error, Plaintiff contends, because without and persuasive opinion that spoke to these limitations, the ALJ necessarily based his functioning conclusions on his own purported "medical expertise." Even after finding as unpersuasive opinion evidence from Drs. Barnhill, Bond, Debroy and others, substantial evidence still supported the ALJ's findings as to Plaintiff's physical impairments. The ALJ found persuasive opinion from a treating orthopedic surgeon in 2020 who commented specifically on Plaintiff's physical functioning abilities and limitations. (Tr. at 573). The ALJ also found persuasive opinion from Dr. Markway who specifically commented on some of Plaintiff's physical workplace functioning, as well as similar opinion from Dr. Rump. (Tr. at 577-78). The ALJ undertook a longitudinal analysis, commenting on the evolution of Plaintiff's symptoms over time. (Tr. at 573-76). The ALJ also specifically discussed the results of various imaging studies as well as clinical and laboratory findings. (Tr. 575-76). The ALJ also considered Plaintiff's subjective description of symptoms during the course of two oral hearings on the matter. (Tr. at 576). Altogether, this indicates substantial evidence supports the ALJ's findings as to Plaintiff's ability to physically function in the workplace.

Plaintiff then contends that the ALJ's RFC lacks substantial evidence also because the ALJ mistakenly compared results from an MRI with results from an x-ray and also because the ALJ stated that Plaintiff's stenosis appears only the central canal of L3-L4, but in reality appears in other areas of the spine. Though it appears the ALJ may have compared MRI and x-ray results (Tr.

8

at 575), the ALJ nonetheless found that Plaintiff does suffer from some significant degree of stenosis. This conclusion, as the ALJ points out, supports the significant limitations to the sedentary work described in Plaintiff's RFC. Because the ALJ considered Plaintiff's stenosis and undertook to understand the severity and significance of Plaintiff's back problems, substantial evidence supports the ALJ's findings as to Plaintiff's workplace functioning.

C.  The Commissioner sustained her burden at step five

Plaintiff's final point on appeal is that the ALJ committed reversable error when he failed to reconcile an apparent inconsistency between the vocational expert's testimony and the dictionary of occupational titles ("DOT"). This inconsistency exists, Plaintiff argues, because the DOT's description of one of the jobs the ALJ found suitable for Plaintiff, toy stuffer, mentions the use of a foot pedal to blow stuffing into toys. This constitutes inconsistency, Plaintiff argues, because the ALJ's RFC restricted Plaintiff's ability to operate foot controls. Plaintiff, however, concedes that the DOT's description of a toy stuffer also indicates the employee may stuff toys by hand. Without support, Plaintiff argues operation of the foot pedal rather than hand stuffing constitutes the primary method by which one stuffs toys. The text of the DOT's description of the toy stuffer job clearly mentions that the job may be completed by hand and provides no basis for concluding that operation of a foot pedal is the primary avenue through which one stuffs toys. Even if one method were primary and the other secondary, this does not indicate conflict exists where, as here, the ALJ found a limited ability to operate foot pedals. This is not reversable error.

9

Case 4:21-cv-00829-MDH   Document 19   Filed 03/28/23   Page 9 of 10

## CONCLUSION

For the reasons set forth herein, the Court finds there is substantial evidence in the record as a whole to support the ALJ's determination. Accordingly, the Commissioner's decision denying benefits to Alexander Mortenson is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: March 28, 2023                             */s/ Douglas Harpool*
                                                           **DOUGLAS HARPOOL**
                                                           **United States District Judge**